UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| DETRICK L. FRANKLIN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | CAUSE NO. 1:12-CV-288-PS-RBC |
| TUTHILL CORPORATION/TRANSFER SYSTEMS, *et al.*, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Detrick Franklin claims that his former employer, Tuthill Corporation/Transfer Systems, and several of its employees discriminated against him on the basis of his race and disability, failed to accommodate his disability, retaliated against him for complaining about the way that he was treated, interfered with his FMLA rights and retaliated against him for exercising those rights, and terminated him without due process [DE 1]. The Defendants have moved to dismiss the complaint on a number of grounds. For the reasons below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

According to his complaint, Plaintiff Franklin was an hourly-wage employee at Tuthill Corporation/Transfer Systems, which manufactures fluid transfer pumps, from at least August 2006 [DE 1 at ¶¶ 2-3; DE 1 at 18]. Since then, Tuthill has known that Franklin is disabled due to complications from a 1997 ankle injury [DE 25 at 2].[1] Franklin has degenerative arthritis in his

---

[1] In addition to his complaint, Franklin alleged additional facts in his Response to the Motion to Dismiss [DE 24]. Additionally, without leave of court, Franklin filed an "Amended Brief in Support of Opposition to Defendants Motion Dismiss Complaint" [DE 27], which the Defendants have objected to [DE 28]. Because Franklin is a *pro se* litigant who is entitled to have his pleadings construed liberally, *see Erickson v. Pardus,* 551 U.S. 89, 94 (2007), I will consider Franklin's multiple responses in ruling on

right ankle, which causes chronic pain and fatigue [DE 25 at 2]. As a result of his condition, he was first approved for FMLA leave on October 3, 2007 [*Id.*].

Franklin alleges that Tuthill repeatedly discriminated against him for exercising his FMLA rights and because of his disability. He alleges that on May 11, 2010, during a company meeting, Defendant Jeanice Croy gave a PowerPoint presentation showing the effect that FMLA recipients had on the company [DE 1 at 4]. He alleges that on June 14, 2010, Croy again discriminated against employees who took FMLA leave by stating that company production issues were being caused by their absences [DE 1 at 5].

Additionally, in June 2010, Tuthill increased the hourly demand requirements for Franklin's work area by 95%, which doubled the amount of weight that each worker had to handle per hour [*Id.* at ¶ 10]. As a result of this increased workload, Franklin's ankle began to hurt, he began to take more pain medication, and his attendance at work began to suffer [DE 25 at 2]. On August 9, 2010, Franklin tried to take FMLA time off from work because of his ankle, but because of his medication, he overslept, called in to work late, and was disciplined [DE 1 at ¶ 11]. Afterward, his union steward took the matter up with Brosamer and argued that the absence should have been considered covered by FMLA; at the same time, Plaintiff asked if he could be moved to a different shift to accommodate his ankle disability, which had been exacerbated by the increased hourly demand requirements [*Id.*]. Brosamer told Franklin that there were no positions available on the second shift, and that she did not have time to show Franklin job bids that were "on the board" and were not filled [*Id.*]. Franklin's union steward repeated the request on July 24, 2010, and Franklin alleges that Brosamer did not provide any supporting documentation at that time [*Id.* at ¶ 12].

---

this motion.

On November 19, 2010, Franklin and his union steward confronted Brosamer about Franklin's request to move to the second shift, and complained that Tuthill had recently hired new employees to the second shift, which was inconsistent with Franklin's senior status at the company and gave the appearance that Tuthill was intentionally not accommodating Franklin's disability [*Id.* at ¶ 13]. Franklin alleges that Brosamer gave a reason inconsistent with what she had previously told Franklin about the positions [*Id.*].

Two days later, Franklin and his union steward asked Brosamer to provide them information regarding when the new hires were made, and she initially refused [*Id.* at ¶ 14]. After Franklin said that the new employees had been hired two weeks after Franklin requested a move to the second shift, Brosamer said that the employees had been hired at the end of September (which Franklin alleges is untrue, and that the employees were in fact hired in October) [*Id.* at ¶ 14].

While Franklin was employed at Tuthill, he attended college and was taking business classes [*Id.* at ¶ 1]. Franklin, who is black, claims that on a number of occasions, he was approached by Defendants' employees about moving from a salary position into a management position [*Id.* at ¶¶ 3, 15, 24]. To Franklin's knowledge, no black employees had held management positions at Tuthill [*Id.* at ¶ 3]; he also alleges that in general, employees who take FMLA leave and African-American employees hold few salaried positions, are harassed, and terminated at higher rates than similarly situated white employees [DE 25 at 3; DE 27 at 3]. When he approached Defendant Lee Ray about his education and moving up in the company, Defendant Ray repeatedly encouraged him to look for such a position elsewhere [DE 1 at ¶ 3, 9, 15, 17].

In January 2011, Franklin met with one of his supervisors about a move to a division

called the Kaizen Production Office team [*Id.* at ¶ 18]. On January 6, 2011, Franklin and his union steward inquired about the Kaizen positions, and Franklin noted that he wanted to get into a position that would best accommodate his disability [*Id.* at ¶ 21]. Brosamer told Franklin that the Kaizen positions required testing, and Jeanice Croy, who administered the tests, was gone [*Id.*].

On January 10, 2011, Brosamer informed Franklin that his job position was being eliminated, that he would need to bid on a different position [*Id.* at ¶ 19]. Franklin alleges that he was denied his seniority "bump rights" (he doesn't explain what those are), and that Brosamer subsequently re-posted his job position as a different, lesser-paying position that was eventually filled by a white employee [*Id.* at ¶ 19].

On January 28, 2011 or February 15, 2011,[2] Plaintiff filed a grievance over discipline he received for being late on an icy day, when many other employees were also late [*Id.* at ¶ 20]. In the grievance, Franklin wrote that the company had singled him out for "cheap shots," and that Tuthill had failed to accommodate his disability since August 2010 and was now trying to "use anything to terminate him" [*Id.* at ¶ 23].

In February 2011, Tuthill denied Franklin's request for tuition reimbursement [*Id.* at ¶ 22]. Franklin alleges that he asked Tuthill's Human Resource staff about tuition reimbursement on numerous occasions and that he completed the paperwork they asked him to do to receive it, but that Defendants Ray and Brosamer feigned ignorance about those conversations, and that Ray told Franklin that Tuthill was not required to provide tuition reimbursement for hourly

---

[2] In his complaint, Franklin alleged that he filed Grievance # 40569, relating to the discipline he received for being late due to bad weather, on two different dates: January 28, 2011, and February 15, 2011 [DE 1 at ¶¶ 20, 23]. For purposes of this motion, it is not necessary to determine which of these dates is correct, nor whether Franklin filed two grievances related to the same subject matter.

employees, although it did so from time to time on an individual basis [*Id.* at ¶ 22]. Franklin filed a grievance related to the tuition reimbursement in mid-February [*Id.*]. In March 2011, during a meeting about the grievance, Defendant Ray told Franklin and his union steward that Tuthill would not create a management position for Franklin and that the tuition reimbursement policy had been created to allow Tuthill to choose who it wanted to be on its management staff [*Id.* at ¶ 24].

On March 10, 2011, Franklin attended a union rally in Indianapolis [*Id.* at ¶ 25]. The following day, Franklin was terminated for missing work, though he alleges that he had been granted a vacation day to attend the rally and had three remaining vacation days [*Id.* at ¶ 26]. Tuthill eventually paid Franklin for the March 10 vacation day, but did not pay him for the remaining vacation days that he had accrued [*Id.* at ¶ 28].

On April 21, 2012, Tuthill offered to hire Franklin back, but without back pay [*Id.* at ¶ 29]. Franklin refused and filed a complaint with the Equal Employment Opportunity Commission in September 2011 [DE 1 at 18]. The EEOC issued its right-to-sue letter on May 24, 2012 [DE 1 at 16], and Franklin then filed this lawsuit, alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5; failure to accommodate disabilities in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101; racial discrimination in violation of 42 U.S.C. § 1981; retaliation for opposing racial discrimination in violation of Title VII; interference with rights under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601; retaliation for exercising FMLA rights; and denial of industrial due process [DE 1].

**DISCUSSION**

The minimum requirements for pleading a claim for relief are contained in Federal Rule of Civil Procedure 8. That rule requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Meanwhile, Rule 12(b)(6) provides for the dismissal of claims that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The Supreme Court has refined its interpretation of the pleading standards in recent years, beginning with its opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In the context of a motion to dismiss for failure to state a claim, the Court stated that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. at 555 (quotation marks and brackets omitted). The Court later addressed *Bell Atlantic* and held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). However, "[a] plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (internal citation and quotation marks omitted). Although at this stage I still must accept all allegations as true and draw all reasonable inferences in Franklin's favor, I don't need to accept threadbare legal conclusions supported only by conclusory statements. *Iqbal*, 129 S. Ct. at 1949. Regardless, because Franklin is proceeding *pro se* in this case, his pleadings will be liberally construed and held to a less stringent standard than that to which the formal pleadings of lawyers are held. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

I.   **Franklin has voluntarily dismissed his Section 1981 and industrial due process claims.**

In its briefing on the pending motion to dismiss, the Defendants challenged Franklin's claim brought under 42 U.S.C. § 1981. In his response to the motion to dismiss, Franklin agreed to withdraw his claims under Section 1981. [DE 24 at 3]. Accordingly, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), the Court will **DISMISS** Franklin's § 1981 claim.

The same is true of Franklin's "industrial due process" claim. Industrial due process is a concept that is applied by arbitrators in assessing disputes under collective bargaining agreements and refers generally to interpreting general provisions in such agreements to require fair discipline procedures. *Stroehmann Bakeries, Inc. v. Local 776, Intern. Broth. of Teamsters*, 969 F.2d 1436, 1444 (3rd Cir. 1992). The concept of "industrial due process" is distinct from due process as required by the Constitution. *Id.* at 969 F.2d at 1445, n.7. In his response to the motion to dismiss, Franklin also acknowledges that there is no cause of action for denial of industrial due process, and "withdraws" his claim [DE 24 at 3]. Accordingly, the claim of "industrial due process" will also be dismissed.

II.  **Franklin's Title VII and ADA claims can proceed against Defendant Tuthill Corporation/Transfer Systems.**

   A.  **Franklin's Title VII and Americans with Disabilities Act claims cannot be dismissed as untimely at this point.**

Title VII prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. The Americans with Disabilities Act prohibits employers from discriminating against disabled employees on the basis of their disabilities. *Dickerson v. Bd. of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 600 (7th Cir. 2011). Under both the ADA and Title VII, "a plaintiff must file her suit within 90 days from the date the EEOC gives notice of the right to sue." *Houston v. Sidley & Austin*, 185 F.3d 837, 838-

39 (7th Cir. 1999); 42 U.S.C. § 12117(a); 42 U.S.C. 2000e-5(f)(1). "The 90-day period of limitation set forth in 42 U.S.C. § 2000e-5(f)(1) begins to run on the date that the EEOC right-to-sue notice is actually received either by the claimant or the attorney representing him in the Title VII action." *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001). In other words, "this 90-day period begins to run when the claimant receives actual notice of her right to sue." *Houston*, 185 F.3d at 839. When a plaintiff fails to file suit within the ninety day window, dismissal is appropriate. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002); *Portillo v. Zebra Tech. Corp.*, 154, Fed. Appx. 505, 507 (7th Cir. 2005) (dismissal appropriate where *pro se* plaintiff filed complaint ninety-two days after receipt of right-to-sue letter); *Spearman v. U.S. Steel Corp.*, 2013 WL 170667, at *3 (S.D. Ind. Jan. 16, 2013)(dismissal appropriate where *pro se* plaintiff filed complaint ninety-three days after receipt of right-to-sue letter).

For his part, Franklin argues that his claims are timely because they are related to the FMLA retaliation that he has alleged [DE 24 at 3]. However, that argument is neither here nor there as to the ninety-day filing period. The real issue is that Franklin has averred in his complaint that he received the EEOC right-to-sue notice on May 26, 2012 [DE 1 at 2]. He then filed his lawsuit on August 27, 2012 – ninety-three days after he received the letter, which may put him outside the ninety-day limitations period. However, in Title VII and ADA cases, that time period may be equitably tolled in some restricted circumstances where the plaintiff has made a good faith error or has been prevented in some extraordinary way from filing his complaint in time. *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984); *Threadgill*, 269 F.3d at 850-51.

In this regard, the ninety-day period bears some similarity to the affirmative defense of expiration of the statutory limitations period. A statute of limitations defense is not normally

part of a motion to dismiss under Rule 12(b)(6), and dismissal in such a situation is appropriate only where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). As the Seventh Circuit recently noted, "[a] plaintiff whose allegations show that there is an airtight defense has pleaded himself out of court, and the judge may dismiss the suit on the pleadings under Rule 12(c). . . [b]ut in principle a complaint that alleges an impenetrable defense to what would otherwise be a good claim should be dismissed (on proper motion) under Rule 12(c), not Rule 12(b)(6)." *Richards v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012). Here, it is simply not clear that Franklin has in fact pleaded himself out of court: while he has alleged the date upon which he received the right-to-sue letter and the date of the filing of the complaint is apparent from the record, whether the time period may be subject to equitable tolling is a factual question that cannot be resolved at this stage. In light of Franklin's *pro se* status, I cannot say that he has pleaded himself out of court. Discovery may well reveal a reason that the ninety-day period should be tolled, and this is an issue better-suited for summary judgment – a point illustrated by the cases the Defendants cite in favor of dismissal. *See, e.g.*, *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984); *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001); *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 270 (7th Cir. 2004); *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). Accordingly, the motion to dismiss Counts 1, 2, and 4 as time-barred is **DENIED**.

### B. Franklin cannot state Title VII and ADA claims against the individual defendants.

Franklin has not differentiated his claims as against specific defendants. Rather, all of the claims in his complaint are alleged against all Defendants. The individual Defendants have moved to dismiss the Title VII and ADA claims against them because Title VII and the ADA do not allow for liability against individuals [DE 20 at 3]. They are correct. *See Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995); *EEOC v. AIC Sec. Investigations Ltd.*, 55 F.3d 1276, 1279-82 (7th Cir. 1995). Accordingly, the motion will be **GRANTED** and Counts 1, 2, and 4 are **DISMISSED** as to Defendants Jeanice Croy, Lee Ray, Vivian Brosamer, and Chris Mowery. These counts will proceed against Defendant Tuthill Corporation/Transfer Systems only.

### III. Franklin's FMLA claims are not time-barred and plausibly state a right to relief.

This leaves only Franklin's claims for interference with his FMLA rights and retaliation for exercise of his FMLA rights. The Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, prohibits employers from interfering with an employee's rights under the Act or to discharge or discriminate against any employee for opposing any practice that the Act makes unlawful. 29 U.S.C. § 2615(a). The FMLA's purpose is to allow employees to take periods of leave from their jobs for health or family reasons (such as the serious health condition of the plaintiff himself) and permits an employee to take leave and be reinstated when his leave is finished. *Phelan v. City of Chicago*, 347 F.3d 679, 683 (7th Cir. 2003). In a case where an employee alleges that his employer discriminated against him based on the FMLA, the question is "whether the employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Horowitz v. Board of Educ. Of Avoca School Dist. No. 37*, 260 F.3d 602, 616 (7th Cir. 2001). If an employee takes FMLA leave, an employer cannot use it as a negative factor in hiring, promotions, or disciplinary actions. *Breneisen v. Motorola, Inc.*, 512

F.3d 972, 978 (7th Cir. 2008).

      **A.**     **Franklin's FMLA claims are not time-barred.**

The Defendants' main argument regarding Franklin's FMLA claims is that they are time-barred. However, as discussed above, a statute of limitations defense is not normally part of a motion to dismiss under Rule 12(b)(6), and dismissal in such a situation is appropriate only where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Andonissamy*, 547 F.3d at 847. With those considerations – and Franklin's *pro se* status – in mind, I find that he has plausibly stated claims for FMLA interference and FMLA discrimination.

The applicable statute here provides that ". . . an action may be brought . . . not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). For willful violations of § 2615, the statute of limitations is three years. 29 U.S.C. § 2617 (c)(2). The Defendants have argued that Franklin's complaint contains only three factual allegations of FMLA violations, the latest of which occurred on August 9, 2010 [DE 21 at 17]. Thus, the Defendants argue, August 9, 2010 was "the last event constituting the alleged violation for which the action is brought," and Franklin's complaint, filed on August 27, 2012, was outside the two-year statute of limitations pursuant to 29 U.S.C. § 2617(c)(1) [*Id.*].

It is true that Franklin has made several allegations that directly support his claims that Tuthill violated § 2615: he alleges that on May 11, 2010, during a company meeting, Defendant Jeanice Croy gave a PowerPoint presentation showing the effect that FMLA recipients had on the company [DE 1 at 4]. He alleges that on June 14, 2010, Ms. Croy again discriminated

against employees who took FMLA leave by stating that company production issues were being caused by their absences [DE 1 at 5]. He alleges that on August 9, 2010, Defendant Vivian Brosamer disciplined him for an absence that should have been covered under FMLA [DE 1 at 6]. While the Defendants are correct that these three instances are the only allegations that Franklin specifically labeled as involving "FMLA," they fail to consider the context of the rest of Franklin's allegations. Read broadly and as a whole, Franklin's complaint conceivably pleads that he took time off of work that was covered by FMLA, that his employer was displeased with his exercise of that right, and because of that displeasure, it refused to promote him to a management position, denied him tuition reimbursement, and ultimately discharged him. These allegations make it entirely plausible that Tuthill's ongoing treatment of Franklin, up to his termination, was "motivated by an impermissible retaliatory or discriminatory animus." *Horowitz*, 260 F.3d at 616. Accordingly, his FMLA claims cannot be dismissed as time-barred, and the motion to dismiss on these grounds is **DENIED**.

      **B.    Franklin's allegations do not plausibly state a right to relief against Defendant Mowery.**

In addition to their argument regarding the statute of limitations, the Defendants argue that Franklin's FMLA claims against Defendant Chris Mowery cannot proceed because the complaint does not allege that Mowery possessed control over Franklin's FMLA rights [DE 21 at 18]. Specifically, they argue, the complaint fails to allege that Mowery had influence over Franklin's ability to take FMLA leave or his right to return to his position following leave, and contains no specific allegations about Mowery whatsoever [*Id.*].

The FMLA provides that the term "employer . . . includes . . . any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). So conceivably, a plaintiff can state an FMLA claim against an

individual, and not just against the corporate or organizational employer. However, Franklin has failed to do so here.

In contrast to the allegations that he provides regarding Defendants Ray, Brosamer, and Croy, Franklin's complaint never even mentions Defendant Mowery's name, but for the caption and the request for relief. There is simply no description whatsoever of Mowery's position in the company[3], any actions that he has taken in relation to Franklin, or what Mowery possibly has to do with this case, which means there is nothing about Mowery that I could construe as true to determine if Franklin has a plausible claim against him. This is insufficient under *Bell Atlantic*, for "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Bell Atlantic*, 550 U.S. at 556, n.3. "After *Twombly* and *Iqbal* a plaintiff to survive dismissal must plead some facts that suggest a right to relief that is beyond the speculative level." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (citations and quotations omitted).

Here, there are not "some facts." There are no facts. Even if I were to look beyond Franklin's pleading to his response to the motion to dismiss, he posits only that his claim against Mowery is "founded on the basis of his failure to act in his capacity as a 'conscience leader' and take measures [to] correct or impede the violations" [DE 24 at 3]. This allegation still fails to put Mowery on notice of the basis of the claims against him. This is the type of situation where "the factual detail in a complaint" is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Brooks v. Ross*, 578 F.3d

---

[3]Franklin's NLRB charge, attached to his complaint, indicates that Mowery is a "VP Operations" [DE 1 at 18].

574, 581 (7th Cir. 2009) *quoting Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

Accordingly, the motion to dismiss Counts 5 and 6 against Mowery is **GRANTED**.

**IV.     The defects in service of process do not warrant dismissal.**

The Defendants have argued in their motion to dismiss that they were not properly served, and that the case should be dismissed on that basis [DE 20 at 2]. Specifically, they object on the basis that Defendant Tuthill's receptionist, who signed all of the return receipt cards for the individual defendants, was not authorized to accept service; and the corporate defendant was not properly served because the summons was not sent to its appointed agent and instead sent to the company's address [DE 21 at 9]. The Tuthill receptionist also signed the return receipt card for the company's summons [*Id.*]. Though they raise this issue at the outset of the motion to dismiss, they specifically requested that the Court resolve the case on the previously-discussed substantive grounds and "only reach the insufficiency of service should any of Plaintiff's claims remain pending" [DE 21 at 10]. Considering that the purpose of serving a defendant with the complaint and summons is to apprise the defendant that he is being sued and to subject the defendant to the Court's jurisdiction, the Defendants' request that the Court first assess their *substantive* 12(b)(6) arguments on the merits before reaching the issue of service is curious at best. Their explicit request to the Court to resolve the matter on substantive grounds would seem to hint at a waiver of the issue: how can a party complain that it has not been properly notified that it is subject to suit, but only *after* it has had the opportunity for a court to review its arguments on the merits? Putting this aside, I will presume that the Defendants have not waived their objections to service, and address the objections as to the individual defendants and the corporate defendant below.

### A. The individual Defendants were properly served.

First, I will consider the service of process upon the individual defendants. Indiana Rule of Trial Procedure Rule 4.1(A)(1) explicitly permits service upon an individual by registered or certified mail, sent to the individual's place of business. In *LaPalme v. Romero*, 621 N.E.2d 1102 (Ind. 1993), the Indiana Supreme Court held that when a personal process server left process with the legal manager of the defendant's employer, who lacked authority to receive process on the defendant's behalf, service was improper. Moreover, the court found, over the plaintiffs' objections, that service could not be saved by Indiana Rule of Trial Procedure Rule 4.15(F), which provides that "[n]o summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond." The Court found that because Indiana's service of process rules did not authorize the leaving of a summons at the defendants' place of work (as opposed to leaving it at one's abode), the defendant was not properly served. *Id.* at 1105-06.

The Defendants argue that *LaPalme* stands for the proposition that service was not proper upon the individual defendants. But this case is different than *LaPalme*. Here, the summonses were sent via registered mail to the individuals' places of work, which is specifically enumerated as an appropriate manner of effecting service under the Indiana rules. By contrast, in *LaPalme*, leaving a copy of service is only permissible at the defendant's abode – not at his place of work. Similarly, the other case cited by the Defendants, *Higgason v. Autterson*, 49 Fed. Appx. 73, 77 (7th Cir. 2002), involved service by registered mail, but in that case, the summons was mailed to the defendant's *former*, instead of present, residence – another instance of the plaintiff failing to follow the service rules. Neither case stands for the proposition that a summons specifically

addressed to a defendant at his or her appropriate business address is somehow deficient because the operation of the workplace's mailroom means that a receptionist is the person who accepts mail that is specifically addressed to another.

Here, Franklin followed the rule: he mailed the summons to the individual defendants at their places of employment, as prescribed by Indiana law, but process was intercepted and signed for by the employer's receptionist, who lacked the authority to accept such service. So unlike *LaPalme* or *Higgason*, this is an instance where Franklin appropriately followed the rules and "reasonably calculated to inform the person to be served that an action has been instituted against him," and if the service was somehow deficient, the problem should be deemed a mere "technical defect." Ind. R. Tr. Pr. 4.15(F); *LaPalme*, 621 N.E. 2d at 1106. Therefore, I find that service upon the individual defendants was sufficient.

### B. The Court will exercise its discretion to extend the time for serving Defendant Tuthill Corporation/Transfer Systems.

Secondly, Defendant Tuthill challenges Franklin's service of process upon it [DE 21 at 9-10]. Tuthill's summons was addressed to it at its address in Fort Wayne [DE 9]. Federal Rule of Civil Procedure 4(h)(1) provides that service upon an organization must be made "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . ." It also permits a plaintiff to avail himself of the approved state law mechanisms for serving an organizational defendant. *Id.* In Indiana, service upon an organization may be made "upon an executive officer thereof, or if there is an agent appointed or deemed by law to have been appointed to receive service, then upon such agent." Ind. R. Tr. Pr. 4.6(A)(1). Tuthill argues that because Franklin did not serve its agent appointed to receive service on its behalf, it has not been properly served [DE 21 at 9].

Here, there's no question that Franklin didn't serve Tuthill's registered agent, so service is technically defective. Federal Rule of Civil Procedure 4(m) requires that service be made within 120 days of the filing of a complaint. However, the rule's 120-day requirement for serving the defendant may be extended upon a showing of good cause. *See Troxell v. Fedders of N. America, Inc.*, 160 F.3d 381, 382-83 (7th Cir. 1998). Rule 4(m) provides that "if the plaintiff shows good cause for the failure [to serve in a timely way], the court shall extend the time for service for an appropriate period." And "[e]ven if a plaintiff does not establish good cause, the district court may in its discretion grant an extension of time for service." *Id*. In his response to the motion to dismiss, Franklin did not respond to the issue of improper service, so it would be difficult for the Court to say that he has established good cause for the improper service. However, I am permitted "to relieve a plaintiff of the consequences [of defective service] even if there is no good cause shown." Fed. R. Civ. P. 4(m), Advisory Committee Note, 1993 Amendments. The note specifically cautions that in cases where dismissing the case without prejudice would result in the running of the statute of limitations, courts should consider extending the time for the plaintiff to effect proper service. *Id*., *see also Paranaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 341 (7th Cir. 1996) (it was "incumbent upon the district court to fully consider" the statute of limitations before dismissing suit for defective service). Here, if the suit was dismissed without prejudice to refiling, many of the allegations in Franklin's complaint would fall outside the relevant statutory limitations periods. Given Franklin's good faith effort to serve Tuthill – he did, in fact, send a summons and copy of the complaint to an address that was reasonably calculated to apprise Tuthill of the lawsuit – his *pro se* status, his effort to comply with Indiana's rules regarding service of process, I find that it is appropriate for Franklin to have more time in which to properly serve the individual defendants.

I therefore **ORDER** Franklin to serve Defendant Tuthill Corporation/Transfer Systems' registered agent for service of process, which, according to the Indiana Secretary of State's web site, is CT Corporation System, 251 E. Ohio Street, Suite 1100, Indianapolis, Indiana 46024.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [DE 20] is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED**.

ENTERED: July 3, 2013

s/ Philip P. Simon<br>
PHILIP P. SIMON, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT